*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 24-CV-1022

BOZZUTO MANAGEMENT COMPANY, *et al.*, APPELLANTS,

v.

KELLY CRAIG, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(2024-CAB-005915)

(Hon. Maurice A. Ross, Motions Judge)

(Submitted February 18, 2026                    Decided April 30, 2026)

*James D. Bragdon* and *Christina F. Araviakis* were on the brief for appellants.

*Cathy A. Braxton* was on the brief for appellee.

Before MCLEESE, DEAHL and HOWARD, *Associate Judges*.

HOWARD, *Associate Judge*: Appellants challenge what they describe as the appellee's collateral attack in the Superior Court Civil Division on a default judgment entered against the appellee in an eviction action in the Landlord and Tenant Branch of the Superior Court. Appellants argue that the appellee's attack was improper under our application of Superior Court Rules of Civil Procedure Rule

60 in *Threatt v. Winston*, 907 A.2d 780, 787 (D.C. 2006), and that the Civil Division's order granting preliminary injunctive relief from the default judgment should be vacated. We disagree. In limited circumstances such as these, where a litigant first attacked a default judgment in the court that issued it, we hold that a subsequent motion in a collateral court for temporary relief to avoid irreparable harm while the issuing court considers the merits of the attack against its judgment does not contravene Rule 60 and is not improper. We affirm the preliminary injunction granted by the Superior Court Civil Division.

## I.     Background

This appeal arises from an eviction proceeding conducted in the Landlord and Tenant Branch (L&T) of the Superior Court. Appellants, Bozzuto Management Company and John Hancock Life Insurance Company, respectively manage and own the apartment leased by the appellee, Ms. Kelly Craig. Ms. Craig, who uses a wheelchair, had lived in the apartment since she was released from nursing home care after she suffered a stroke in 2018. Ms. Craig's rent was fully paid by a D.C. housing voucher; she had the responsibility of paying for utilities, parking, and other personal expenses.

Appellants initiated an action for repossession of Ms. Craig's apartment in the L&T court in early May 2024, after Ms. Craig failed to fulfill her obligation to pay

parking fees and utilities.[1]  When the time came, Ms. Craig did not attend the initial hearing on July 25, 2024.  Appellants represented to the L&T court that they had served Ms. Craig a copy of the complaint and summons by proxy, through her brother, Brian Craig; however, a declaration of service later showed that Appellants erroneously stated they had served Ms. Craig but provided a description of her brother instead.  Despite the mix-up, the L&T court found that Ms. Craig had been properly served and entered default judgment against her.[2]  Appellants then secured a writ of restitution against Ms. Craig, and she was evicted as scheduled by the U.S. Marshals Service on September 10, 2024.

That same day, Ms. Craig filed an Emergency Motion to Vacate Default Judgment for Possession Due to Lack of Personal Jurisdiction and Insufficient Service of Process alongside a Motion for a Temporary Restraining Order and Preliminary Injunction with the L&T court.  The record does not indicate what happened over the next week; however, we discern that Ms. Craig either received

---

[1] Ms. Craig asserts that she paid these fees at least in part and her failure to pay was caused by a payment system which did not delineate between the different categories of charges and simply categorized everything as "rent."  Ms. Craig's housing voucher pays her rent.  Ms. Craig alleges that she was never able to confirm exactly how much she needed to pay for utilities.

[2] Counsel for Ms. Craig asserts that Ms. Craig did not become aware of the eviction action until after the default judgment had been entered against her.

notice that her emergency filings would be heard three months later or she did not receive an immediate response. A week after submitting her L&T filings, she also filed a complaint with the Civil Division of the Superior Court against Appellants alleging various counts related to wrongful eviction and requested the Civil Division "declare any judgment for possession [from the L&T court] void, [and] restore Plaintiff's possession in the Property." Shortly thereafter, Ms. Craig filed a Motion for Temporary Restraining Order and Preliminary Injunction in the Civil Division to seek relief from the L&T court's default judgment.[3]

While Ms. Craig's motions to vacate default judgment and for temporary restraining order and preliminary injunction were still pending in the L&T court, a judge of the Civil Division heard arguments on Ms. Craig's motion for a preliminary injunction. At the motions hearing, Ms. Craig argued that there would be a substantial likelihood that she would prevail on the merits of her motion to vacate the default judgment in the L&T court due to improper service of process, and that only a preliminary injunction could prevent irreparable harm in accordance with the public interest.

---

[3] The record does not include Ms. Craig's motion and the facts we derive concerning it come from the Civil Division court's order granting a preliminary injunction.

The Civil Division court agreed and granted the preliminary injunction through an oral order followed by a written order.  The Civil Division court's written order acknowledged the L&T court's standing default judgment against Ms. Craig and granted a preliminary injunction "to restore [Ms. Craig's] housing at the property, lasting only until the next hearing before the Landlord and Tenant Branch." The L&T court subsequently vacated its default judgment against Ms. Craig and later dismissed Appellants' eviction action altogether.  On appeal, Appellants represent that Ms. Craig is living in her apartment and that they are no longer seeking to have her removed.

This timely appeal follows an order for attorney's fees awarded to Ms. Craig's counsel payable by Appellants pending the outcome of this appeal.[4]

## II.    Standard of Review

"A preliminary injunction is an extraordinary remedy, and the trial court's power to issue it should be exercised only after careful deliberation has persuaded it

---

[4] As we noted in our order denying dismissal of this case for mootness, "the trial court has issued an order awarding appellee attorney's fees for appellants' violation of the order on appeal, but has conditioned that award on appellee prevailing on appeal."  Although Ms. Craig has been returned to her apartment and Appellants assert that they are no longer seeking to remove her, this case presents a live case and controversy in the award of attorney's fees pending the outcome of this decision.

of the necessity for the relief." *District of Columbia v. Sierra Club*, 670 A.2d 354, 361 (D.C. 1996) (quoting *Wieck v. Sterenbuch*, 350 A.2d 384, 387 (D.C. 1976)). "We defer to the trial court's findings of fact so long as they are sufficiently supported by the record," and "we leave the decision to grant or deny preliminary injunctive relief to the sound discretion of the trial court." *District of Columbia v. Reid*, 104 A.3d 859, 866 (D.C. 2014). However, "where the action of the trial court turns on a question of law or statutory interpretation," we review de novo. *Id.* (citation modified). We therefore review the legal question of whether the Civil Division court had the authority to grant preliminary injunctive relief de novo.

### III.    Discussion

In the Civil Division, Ms. Craig filed a complaint and a motion for temporary restraining order and preliminary injunction. Appellants challenge only the motion and we, consequently, limit our review to the motion seeking temporary relief. At the heart of this appeal lies the question of whether the Superior Court rules and our precedent allow the Civil Division to grant temporary injunctive relief from a L&T court's default judgment while a motion to vacate that default judgment is pending in the L&T court. Appellants contend that the Civil Division court was precluded under the doctrine of res judicata from issuing relief in the form of a preliminary injunction from the L&T court's default judgment against Ms. Craig. We disagree

with Appellants. In limited circumstances such as these, where a tenant first attacked the default judgment against them in the court that issued the judgment, a subsequent motion in a collateral court for temporary relief to avoid irreparable harm while the issuing court considers the merits of the attack against its judgment is not necessarily improper under Superior Court Rules of Civil Procedure Rule 60.

We begin by discussing Rule 60's two main avenues through which a party may seek relief from a final judgment, the Rule 60(b) motion to set aside judgment and the Rule 60(d) independent action. We discern that Ms. Craig's underlying Civil Division suit is best conceived of as an independent action and discuss why, regardless of the Rule 60 classification, the temporary relief sought by Ms. Craig's motion in the Civil Division, which is the subject of this appeal, falls outside the ambit of Rule 60. We therefore affirm.

### A. Superior Court Rules of Civil Procedure Rule 60

Pursuant to Superior Court Rules of Landlord & Tenant Branch Procedure Rule 2, certain Superior Court Rules of Civil Procedure apply to the L&T court "[e]xcept when inconsistent with the[] rules or the summary nature of landlord and tenant proceedings." Super. Ct. L&T R. 2. Included among the civil rules applicable to the L&T court is Superior Court Rules of Civil Procedure Rule 60, entitled Relief from a Judgment or Order, which mirrors Rule 60 of the Federal Rules of Civil

Procedure. *Id.* (Comment to 2017 amendments, "[t]his rule is identical to Federal Rule of Civil Procedure 60, as amended in 2007").

Generally, Rule 60(b) "governs setting aside a default judgment." *Arthur v. District of Columbia*, 857 A.2d 473, 484 (D.C. 2004). Under Rule 60(b), a party may seek relief on motion for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Super Ct. Civ. R. 60(b).

Alternatively, Rule 60 contains a "saving clause" to "preserve[] the historical authority of the courts of equity to reform judgments in special circumstances." *Carr v. District of Columbia*, 543 F.2d 917, 926 (D.C. Cir. 1976). Rule 60(d), entitled Other Powers to Grant Relief, allows a court to "entertain an independent action to

relieve a party from a judgment, order, or proceeding." This court has had few occasions to address the meaning of independent actions and the proper procedures a party must follow to bring an independent action. However, in *Olivarius v. Stanley J. Sarnoff Endowment for Cardiovascular Science, Inc.*, we determined an independent action refers to an action "in equity," "not limited to cases involving true fraud upon the court, but may be maintained to redress other especially egregious wrongdoing." 858 A.2d 457, 466 (D.C. 2004). An independent action "is available only to prevent a grave miscarriage of justice. The party seeking relief must show that it would be manifestly unconscionable to allow the judgment to stand." *Id.* (citation modified). In *Threatt v. Winston* we further clarified that independent actions come with "stringent requirements." 907 A.2d at 785. An independent action (1) must specifically ask the court to grant relief from a final judgment (2) to prevent a grave miscarriage of justice. *See id.* at 785-86.

As far as what an independent action looks like in practice, *Threatt* cites to several cases from other jurisdictions applying the analogous Federal Rule. *See id.* at 785 (citing *United States v. Beggerly*, 524 U.S. 38, 41 (1998) ("complaint asking the court to set aside a 1982 settlement agreement and to award damages"); *Geo. P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d 44, 45-46 (1st Cir. 1995) (filing a separate suit as an "independent action to set aside a judgment after discovery of fraud in procurement of the settlement agreement"); *Hadges v. Yonkers Racing Corp.*, 48

F.3d 1320, 1321-23 (2d Cir. 1995) (separate suit filed under Rule 60(b) "to set aside the judgment of the court in an earlier case")). Each of *Threatt's* cited cases involve complaints seeking relief from a prior final judgment by filing separately from the original case that resulted in the final judgment.

**1.    Ms. Craig's Suit is Best Viewed as a Rule 60(d) Independent Action; Therefore, Her Motion for Temporary Relief was Proper.**

Upon review of Ms. Craig's decision to file a separate complaint in the Civil Division, we readily conclude that her litigatory conduct implicates Rule 60(d). Ms. Craig's complaint was filed after, and separate to, her Rule 60(b) filing in the L&T court; it also referenced the L&T court's judgment and specifically sought permanent relief from it. In addition to meeting the foremost requirement of an independent action by specifically asking the Civil Division to grant relief from the L&T court's final judgment, *see Threatt*, 907 A.2d at 785, Ms. Craig's complaint brought factual allegations that could be interpreted to represent that a grave miscarriage of justice would result from the continued effectuation of the L&T court's judgment. Ms. Craig alleged that her eviction resulted from what appears to be a fairly obvious failure of service. The eviction caused her to lose shelter, personal property, and access to necessary medical equipment as well as to suffer detrimental health impacts complicated by her already severely disabled state. She

also lost her subsidized housing voucher which could only be reinstated upon "a determination that she was not evicted." Considering these allegations, the complaint itself is more analogous to an independent action under Rule 60(d) than to a Rule 60(b)(4) motion to vacate the L&T court's judgment for voidness. Whether the complaint would have amounted to a successful independent action, however, is not a challenge raised by Appellants and thus a question beyond the scope of this appeal.

Having determined that her underlying Civil Division suit is analytically best conceived of as an independent action, we readily conclude that a motion for temporary equitable relief in conjunction with it is permissible. Appellants do not challenge the findings of the Civil Division court beyond the legal challenge to its authority to grant the motion in the first instance. Having determined it has such authority and discerning no ready error in the Civil Division court's decision, we may affirm on this basis.

We now turn to Appellants' argument that we should construe Ms. Craig's motion for temporary relief as an improper Rule 60(b) attack.

### 2. Ms. Craig's Motion For Temporary Relief Filed in the Civil Division Does Not Contravene Rule 60

Appellants construe Ms. Craig's filings in the Civil Division as a Rule 60(b) attack. Concededly, some authority exists that would allow us to construe her complaint and subsequent motion as a Rule 60(b)(4) motion to set aside judgment for voidness. *See Roebuck v. Walker-Thomas Furniture Co.*, 310 A.2d 845, 846 (D.C. 1973) (looking favorably upon the trial court's decision to treat the complaint as a Rule 60(b)(4) motion "insofar as it sought to have vacated the prior judgment as a motion to vacate"); *accord Threatt*, 907 A.2d at 788 ("*Roebuck* actually reinforces the conclusion that Rule 60(b) governs attempts to set aside a final judgment."). Were we to take this route and view Ms. Craig's filings in the Civil Division as a Rule 60(b)(4) motion to set aside judgment for voidness instead of a 60(d) independent action, our analysis regarding the actual impact of the request for temporary relief would not change.

Ms. Craig's motion in the Civil Division was not improper and may be permitted in limited circumstances such as these—where the tenant first filed a motion to vacate the default judgment and a motion for temporary relief in the issuing court (the L&T court), and then filed a separate motion for preliminary injunctive relief in a collateral court (the Civil Division) to avoid irreparable harm while waiting for the issuing court to consider the merits of the motion to vacate its

judgment and the motion for temporary relief. To illustrate why the motion does not contravene Rule 60, we first analyze this court's decision in *Threatt v. Winston*.

In *Threatt*, we affirmed the trial court's dismissal under the doctrine of res judicata because the plaintiff-appellant failed to attack the default judgment against them in an eviction action as prescribed under Rule 60. 907 A.2d at 790. Like Ms. Craig here, the appellant in *Threatt* failed to appear before the L&T court in an action for possession and the court entered a default judgment against him followed by eviction. *Id.* at 781. Fifteen months after the default judgment, the appellant filed a civil complaint against the appellee seeking compensatory and punitive damages for wrongful eviction. *Id.* at 781-82. Notably, the appellant failed to mention the earlier default judgment or court-ordered eviction in the complaint. *Id.* Upon learning about the prior default judgment, the trial court *sua sponte* dismissed the case, "explaining that it was barred under the doctrine of res judicata." *Id.* at 782. We affirmed, noting that "in this context, where Threatt is litigating in the Superior Court while hoping to avoid any preclusive effect of a prior, final judgment of the Superior Court in a civil case, Rule 60 prescribes the only type of attack he may pursue." *Id.* at 787.

*Threatt* stands for the general principle that attacks on a court's decision cannot work to undermine that court's finality of judgment. *Id.* at 784. Such is the

rationale underlying Rule 60 and the doctrine of res judicata. *See Molovinsky v. Monterey Co-op.*, 689 A.2d 531, 533 (D.C. 1996) ("Under the doctrine of res judicata or claim preclusion, a final judgment on the merits embodies all of a party's rights arising out of the transaction involved, and precludes relitigation in a subsequent proceeding of all issues arising out of the same cause of action between the same parties . . . whether or not the issues were raised in the first trial." (citation modified)); *see also Threatt*, 907 A.2d at 782 n.3 (stating that Threatt "cannot succeed in his claim of wrongful eviction without nullifying the initial judgment or impairing rights established in the initial action. So long as it remains undisturbed, the prior judgment precludes Threatt's new claim.").

The principles inherent in res judicata are not necessarily implicated in a party's motion for temporary relief from a collateral court while acknowledging and awaiting a final adjudication on a Rule 60 motion from the issuing court. A motion in such a scenario does not contravene Rule 60(b) when it does not seek to overturn the issuing court's judgment. So long as the collateral court deciding the motion cabins any relief it grants with respect to the issuing court's authority, the issuing court's final judgment remains undisturbed and its ability to adjudicate the pending Rule 60(b) motion before it is left untouched.

Such is the case here. Ms. Craig first sought to exhaust her remedies in the L&T court by properly filing a Rule 60(b) motion and seeking temporary relief to avoid irreparable harm after being evicted. Then, in her motion for injunctive relief in the Civil Division, she did not attempt to conceal the L&T court's prior judgment, rather, she explicitly asked that the Civil Division look at the merits of her motion to vacate in the L&T court and assess her viability for success as a predicate to granting her temporary relief from the L&T court's judgment. The Civil Division did so and assessed the underlying motion to vacate for voidness due to improper service to determine whether Ms. Craig was entitled to injunctive relief. *See Reid*, 104 A.3d at 867 (considering, among other factors, the movant's likelihood of success on the underlying merits of their action when determining whether to grant injunctive relief).

Upon reviewing the process server's affidavit of service, the Civil Division court found that "Ms. Craig is described in the affidavit as a Black male, aged 53, weighing 205 pounds. . . . Plaintiff is clearly a female," and further found that service of process on a proxy of a defendant is improper under the L&T rules of process. The Civil Division compared the Civil Division's rules for process with the L&T court's rules and noted, "while service upon an agent is typically proper when serving a corporation in a civil matter, the separate [L&T rules] contain no such provision for service of process on an agent or proxy"; "furthermore, [Appellants]

did not provide sufficient evidence as to whether Brian Craig regularly resided in [Ms. Craig's] apartment" to prove that service would have been proper under Super. Ct. Civ. R. 4(e)(2)(B) (Allowing service by "leaving a copy of [the summons, complaint, and Initial Order] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"). These findings, which Appellants do not challenge, were enough for the Civil Division to determine that Ms. Craig would likely prevail in her motion to vacate judgment on account of voidness in the L&T court. The Civil Division court additionally found that only injunctive relief could prevent irreparable harm in light of Ms. Craig's "debilitating medical conditions" compounded by her having "been rendered homeless" as a result of her eviction.

Having determined that injunctive relief was proper, the Civil Division court took great care to grant temporary relief subject to the L&T court's final determination on the merits of Ms. Craig's underlying motion to vacate judgment. We know this because the Civil Division court explicitly stated several times in issuing its oral order that the preliminary injunction is "pending the outcome of a complete hearing . . . in landlord-tenant court," "my order is only in effect until the hearing. . . . It's a temporary [order]," "this [is] a temporary order, pending the full blown hearing on the motion to vacate the default judgment."

Thus, based on the record, we are confident that the Civil Division properly cabined its temporary injunctive relief with respect to the L&T court's final determination. That order, as it stood leading up to the hearing on the motion to vacate and where the L&T court had not addressed Ms. Craig's request for temporary relief, did not impede the L&T court's authority to adjudicate its own judgment. Whether the L&T court affirmed or vacated its default judgment, its ability to do so was not impacted by the Civil Division's temporary relief.

Appellants cite *Threatt* to support their proposition that the only proper way to attack the judgment would have been to petition the court that issued it. Their reliance on *Threatt* in support of this argument is misplaced. First, Ms. Craig did file her initial attack in the L&T court that issued the default judgment. She acted diligently and without delay in seeking to vindicate her rights in the L&T court, as opposed to the appellant in *Threatt* who waited over a year to file their action in a collateral court. Second, *Threatt* targets different behavior—that of a party seeking permanent relief from the judgment of an issuing court by asking a collateral court to overturn the first court.

*Threatt* was concerned with the fact that the former tenant's civil complaint filed in a collateral court "obviously [was] not an attempt to set aside a judgment by motion (indeed, it [did] not even mention the prior judgment)," 907 A.2d at 785, but

was nevertheless an attempt to circumvent the earlier default judgment through the initiation of a new suit, *see id.* at 784 ("Threatt essentially argues that he is entitled to file a new complaint and to ignore the default judgment."). *Threatt* determined that the new suit initiated by the plaintiff-appellant was controlled by Rule 60 because it effectively sought to avoid the preclusive effect of the earlier judgment. *Id.* at 790. *Threatt* concluded "the proper way to attack the judgment would have been to petition the court that issued it" under Rule 60(b).[5] *Id.* at 789. Nowhere in *Threatt's* reasoning does it foreclose a litigant's ability to seek *temporary relief* in a collateral court. Where such temporary relief does not seek to set aside a prior final judgment in effect or by explicit request, *Threatt* does not control nor is Rule 60 violated.

\*   \*   \*

At bottom, we agree that "Rule 60 prescribes the only type of attack [a party] may pursue." *Id.* at 787. But, in limited circumstances such as these, temporary relief should be available to a litigant. Indeed, if this relief were unavailable to Ms.

---

[5] Regarding independent action under Rule 60(d), Threatt concluded that rule did not apply because the plaintiff-appellant's complaint did not fall under the criteria to qualify as an independent action. 907 A.2d at 785 ("Threatt's complaint did not satisfy the foremost requirement of [] an 'independent action'—it did not even mention the prior judgment.").

Craig, her victory in the L&T court ultimately vacating the default judgment would be pyrrhic. In this case, Ms. Craig diligently filed a Rule 60(b) motion and sought emergency temporary relief first in the issuing court, then in a collateral court, to avoid irreparable harm while awaiting determination on her Rule 60(b) attack in the original court. Ms. Craig's motion clearly was not seeking to avoid the preclusive effect of the L&T court's judgment, and the Civil Division carefully crafted its relief to leave the L&T court with final authority. For these reasons Ms. Craig's litigatory conduct does not contravene Rule 60.

## IV. Conclusion

Where a collateral court finds it likely that a moving party will prevail on the merits of an earlier-filed attack in an issuing court, and the party faces irreparable harm while awaiting a determination on that attack, a grant of temporary relief is not improper when cabined to avoid conflict with the ultimate authority of the issuing court. For the foregoing reasons, the order granting a preliminary injunction by the Civil Division of the Superior Court is affirmed.

*So ordered.*